E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorney
Deputy Chief, General Crimes Section
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Corporate and Securities
 Fraud Strike Force
KATHRYNNE N. SEIDEN (Cal Bar No. 310902)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
     1200/1100/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2274/1259/0631
     Facsimile: (213) 894-0141
     E-mail:    benedetto.balding@usdoj.gov
                alexander.schwab@usdoj.gov
                kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

            FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. CR 22-267-MEMF-1
                                   No. CR 22-267-MEMF-2
          Plaintiff,
                                   GOVERNMENT'S MOTION IN LIMINE TO
               v.                  ADMIT STATEMENTS OF DEFENDANT LUCA
                                   SCALISI AGAINST DEFENDANTS DEL
DEL ENTERTAINMENT, INC., et al.,   ENTERTAINMENT, INC., AND JOSE
(1)  DEL ENTERTAINMENT, INC.,      ANGEL DEL VILLAR
     and
(2)  JOSE ANGEL DEL VILLAR,        Hearing Date: 12-17-24
                                   Hearing Time: 2:00 p.m.
          Defendants.              Location:   Courtroom of the
                                               Hon. Maame Ewusi-
                                               Mensah Frimpong

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Benedetto L.

                                   1

Balding, Alexander B. Schwab, and Kathrynne N. Seiden, hereby files its motion in limine to admit a recorded statement of defendant Luca Scalisi against defendants Del Entertainment, Inc. and Jose Angel Del Villar.

This motion in limine is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 8, 2024          Respectfully submitted,

                                 E. MARTIN ESTRADA
                                 United States Attorney

                                 MACK E. JENKINS
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                 _____/s/_____
                                 BENEDETTO L. BALDING
                                 ALEXANDER B. SCHWAB
                                 KATHRYNNE N. SEIDEN
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   STATEMENT OF FACTS...........................................1

    A.   Defendant Scalisi's Role at Del Entertainment............1

    B.   Scalisi Statements.......................................2

        1.   Statement 1: April 2018 Voicemail...................2

        2.   Statement 2: January 11, 2019, Recorded
             Conversation........................................2

        3.   Statement 3: June 13, 2019, Recorded Conversation....3

        4.   Statement 4: WhatsApp Message to Defendant Del
             Villar..............................................4

        5.   Statement 5: May 22, 2020, Interview of Defendant
             Scalisi.............................................5

III.  ARGUMENT.....................................................7

    A.   Defendant Scalisi's Statements Were Made in
       Furtherance of His Conspiracy with Defendants Del
       Entertainment and Del Villar.............................7

    B.   Defendant Scalisi's Statements Are Admissible Against
       Defendant Del Entertainment as Agent Admissions..........9

    C.   Much of Statement 5 Is Nonhearsay.......................10

IV.   CONCLUSION..................................................11

i

**TABLE OF AUTHORITIES**

Page

**Cases**

Boren v. Sable,
  887 F.2d 1032 (10th Cir. 1989) ................................... 9
Bourjaily v. United States,
  483 U.S. 171 (1987) ............................................. 8
Hilao v. Estate of Marcos,
  103 F.3d 767 (9th Cir. 1996) ................................... 10
In re Sunset Bay Ass'n,
  944 F.2d 1503 (9th Cir. 1991) ................................. 10
Sida of Hawaii, Inc. v. NLRB,
  512 F.2d 354 (9th Cir. 1975) ................................... 9
United States v. Bonds,
  608 F.3d 495 (9th Cir. 2010) ................................... 9
United States v. Crespo de Llano,
  838 F.2d 1006 (9th Cir. 1988) ................................. 7
United States v. Draiman,
  784 F.2d 248 (7th Cir. 1986) ................................... 9
United States v. Paris,
  812 F.2d 471 (9th Cir. 1987) ................................... 8
United States v. Paxson,
  861 F.2d 730 (D.C. Cir. 1988) ................................. 9
United States v. Yarborough,
  852 F.2d 1522 (9th Cir. 1988) ............................... 8, 9

**Federal Rules of Evidence**

Fed. R. Evid. 801(d) ......................................... 1, 9

ii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

The defendants are charged with violating the Foreign Narcotics

4 Kingpin Designation Act by continuing to transact in property with a

5 designated person -- Jesus "Chucho" Perez Alvear -- and covering up

6 their efforts to do so.  In particular, the defendants ensured that

7 musical artist Gerardo Ortiz, then represented by defendant Del

8 Entertainment, continued to perform in Mexican concerts promoted by

9 Perez and/or in which Perez managed Del artists even after learning

10 of his designation as a specially designated narcotics trafficker by

11 the Treasury Department.

12

Defendant Luca Scalisi, who handled financial operations for

13 defendant Del Villar's companies, made several inculpatory statements

14 that were recorded.  Four of them were made to a confidential

15 informant then working for Del.  The last was made to FBI agents

16 during a May 22, 2020, interview.  All are facially admissible

17 against defendant Scalisi as party-opponent admissions.  See Fed. R.

18 Evid. 801(d)(2)(A).  But they are also admissible as nonhearsay

19 evidence against his codefendants Del Entertainment and Del Villar.

20 As set forth in more detail below, the first three of these recorded

21 statements constitute admissible co-conspirator statements intended

22 to keep coconspirators abreast of an ongoing conspiracy's activities

23 and spur further action.  See id. 802(d)(2)(E).  All five recorded

24 statements constitute admissions defendant Scalisi made as an agent

25 of his codefendants.  See id. 802(d)(2)(D).

26

27

28

## II.   STATEMENT OF FACTS

### A.   Defendant Scalisi's Role at Del Entertainment

During the relevant time period, defendant Scalisi served in a financial role as CFO of Del Records, parent company of defendant Del Entertainment, and was listed as CFO of defendant Del Entertainment.[1] He was in charge of a corporate credit card used to book expenses related to concerts performed by Del Entertainment artists and was the designated corporate representative over a Mexican bank account in the name of "Del Melodia" that received payments related to concerts performed by Del Entertainment artists in Mexico.

### B.   Scalisi Statements

The recorded statements of defendant Scalisi at issue are set forth in pertinent part below and labeled as Statements 1 through 5.

#### 1.   Statement 1: April 2018 Voicemail

On April 19, 2018, a Del Entertainment employee who later signed up to become a confidential informant provided law enforcement a voicemail message from defendant Scalisi, which the employee indicated he had received that same day.

> Hey [REDACTED], it's Luca.  Uh give me a call.  Angel wanted me to go down to Mexico to meet with uh Manny and Chucho and invoice him, uh from the, Angel's Mexican entity for the money that's owed from Chucho.  I, I, I need to clear this from you first cuz again these guys don't think before they do things cuz Angel's in the middle of trying to get his citizenship and and I don't know that he really, I know that he's owed money from that company for you know, the dances and the events and stuff, but, again, Chucho's under surveillance, he's under homeland security watch, and now we're gonna create a paper trail from him to Angel's

---

[1] Counsel for defendant Scalisi has provided internal records previously unavailable to the government indicating defendant Scalisi ceased acting as CFO for defendant Del Entertainment in early 2018, though public filings did not reflect this change until 2021.  For purposes of this motion, the distinction does not matter given defendant Scalisi's role pertaining to the financial matters at issue.

2

entity in Mexico, while he's trying to get citizenship here
in the US.  I don't care how much money's owed, I'd rather
he hid Chucho's company until the, you know, this mess with
the government and due process is figured out, but uh, give
me a call because I need your advice.  Thanks.

    2.   Statement 2: January 11, 2019, Recorded Conversation

In a surreptitiously recorded conversation with a confidential

informant who was also employed at Del Entertainment at the time,

defendant Scalisi discussed how deposits from defendant Perez would

have come from other promoters rather than directly from defendant

Perez himself:

**CI:** Yeah, yeah, so he sent three uh, Angel said Chucho sent
three deposits already from the bank.

**SCALISI:** To us?

**CI:** Yeah.  In Mexico.

**SCALISI:** Into what?  Into the Mexican bank account?

**CI:** Yeah.

**SCALISI:** Uh, which shows? Do you know the dates of the
show?

**CI:** I don't know. He just said the la-, he sent three
deposits.

**SCALISI:** Cause th-, cause they're not under his name. [UI]…

**CI:** [UI], hopefully it's not under his name, yeah.

**SCALISI:** Well it's not under Chucho's name . . .

**CI:** Okay yeah.

. . .

**SCALISI:** . . . it's under the promoter's name, which would
be Federico Prieto Rodriguez, Onesimo Martinez Vera, I'm
looking at it right now.

**CI:** Yeah.

**SCALISI:** Miguel Angel Ceja Rodriguez are ones that have
showed up.

**CI:** Okay yeah.

3

3.    Statement 3: June 13, 2019, Recorded Conversation

In a surreptitiously recorded conversation with a confidential informant who was also employed at Del Entertainment at the time, defendant Scalisi discussed defendant Perez's OFAC designation and subsequent business between him and defendant Del Entertainment:

**CI:** I think it was through WhatsApp I sent it to.

**SCALISI:** Do you remember that date? On WhatsApp?

**CI:** It was probably before you went to uh … when was that? It would have been April of 2018 I think. Let me see.

. . .

**SCALISI:** Yeah I remember that.

**CI:** When he got that notice from the Treasury Department.

**SCALISI:** Yeah I remember that.  Yeah ok this goes back to December.  Uh no.

. . .

**CI:** Yeah. I don't remember the date.  So, it would have been a, remember when he went to Aguascalientes?

**SCALISI:** Yeah, and he wasn't supposed to.

**CI:** Yeah. How did I . . . think I sent it to you through text message no? The day before or something.  Two days before or something.

. . .

**CI:** Or maybe it's under . . . Try searching Chucho.  Maybe I mentioned Chucho in there.

**SCALISI:** Uh, not in the texts. Uh would it be under a federal agency's name on it?  Uh..

**CI:** What have been I think Treasury Department. Cause he probably gave it to me I think a week before.  You know what I probably gave it . . . I think I gave it to you uh Luca . . . cause I gave the reason that's the date he would have been terminated . . . well supposedly terminated me.  That I was gonna tell EEOC.  Uh I think … or did I hand deliver it to you? I think, maybe.

**SCALISI:** I don't remember.  It was when they stopped him at the border they gave him that notice, right?

4

**CI:** Yes.

**SCALISI:** I wonder what day it was.  And it would have been April 2018.

. . .

**SCALISI:** There's uh deposits here from, from the Mexico account which is Yazmin and Manny and [UI].  I should probably delete that.  I don't fucking know.

**CI:** Oh my God.  So are these invoices from Mexico? Oh my God.  Yazmin sent an invoice to Chucho?

**SCALISI:** [UI] I mean they're kind of particular about what one of them says about [UI].

4.    Statement 4: WhatsApp Message to Defendant Del Villar

Agents recovered the following WhatsApp message from defendant Scalisi to defendant Del Villar after executing a federal search warrant in May 2020:

I think we need to hold up on Biz until next year.  The federal case against you is still open and they are waiting for you to fuck up.  Being in business with criminals and felons will do it.  We need to do lien criminal and judgment search on anyone we close a 7 figure deal with and if they cant hand me over tier ID.  it's a problem.  Anuel will put you in jail with his stupidity.[2]

5.    Statement 5: May 22, 2020, Interview of Defendant
      Scalisi

Investigators recorded their interview with defendant Scalisi at his residence on May 22, 2020.  In the interview, defendant Scalisi summarized his work background with codefendant Del Entertainment going back to 2013 and described his involvement in opening Mexican

---

[2] The Court previously ruled that this WhatsApp message is not admissible against defendant Scalisi under Rule 404(b) but deferred ruling on whether it might be admissible in the government's case-in-chief against defendant Scalisi.  (10/15/24 Order at 12.)  The present request to admit this statement against defendants Del Entertainment and Del Villar is, of course, conditioned on the Court admitting the statement against defendant Scalisi in the first instance, which (in accordance with the prior Court order) will be submitted in the timeline set forth in the Court's standing order.

5

1  bank accounts for Del Entertainment at Santander.  Regarding Perez's

2  designation under the Kingpin Act, defendant Scalisi said the

3  following:

4      **AGENT:** Okay. Well it—in April 2018 the Department of
       Treasury, this is more than one or two years ago.
5
       **SCALISI:**  Yeah.
6
7      **AGENT:** Department of Treasury designated Chucho Perez as
       somebody uh that was in-involved in money laundering.

8      **SCALISI:**  Right right right.

9      **AGENT:** So, at that point letters were sent out um to people
       that had done business with Chucho Perez saying, "Hey, you
10     can't do business with him anymore."

11     **SCALISI:** I remember the-d-the that uh-that um my VP of
       external affairs told me that there was a letter about uh
12     G-Gerardo.  He had told, warned Gerardo they couldn't do
       business in Mexico.
13
       **AGENT:** Okay.  What—
14
       **SCALISI:** I think that was a couple years ago.
15
16     **AGENT:**   That was a couple years ago?

17     **SCALISI:**  That was part of what the fight was between us
       and-and dingus. We said—Listen. You can't go to Mexico.
18     You've been warned.

19     **AGENT:**   Mhmm.

20     **SCALISI:**  You can't go down there. We don't know how you're
       recording the-the-the shows down there.

21     **AGENT:**   Uh-huh.

22     **SCALISI:**  Uh, but if there's anything like you're trying to
       do it up here, you should not be going down there. And he
23     said, 'Yeah, well fuck you guys-fuck you guys.'

24     **AGENT:** Who-who-who warned him specifically?

25     **SCALISI:** Uh Brian Gutierrez.  Uh, VP of external affairs.
       He deals with all regulatory stuff for us.
26
       **AGENT:** Okay.  Okay. Um, so—
27
28     **SCALISI:** He-he'd come into the office and told me about
       that.  That I just told Gerardo [Ortiz] that he should not

                                     6

be going down to Mexico.  And the fucker's still going down to Mexico. Right? I'm like he's an idiot--

**SCALISI:** --he's gonna fucking get arrested.  What the fuck are you going down to Mexico for? When you've told not to go down to Mexico.

**AGENT:** Sure.

**AGENT:** Sure. Um, so then you know he did. He went down to Mexico.

**SCALISI:** Uh, yeah.

**AGENT:** Right?

**SCALISI:** And that, it led to a further strain between us.

**AGENT:** That led to further strain?  Okay.

**SCALISI:** Yeah.

**AGENT:** So when he got paid for the gigs that he did in Mexico--

**SCALISI:** Uh huh.

**AGENT:** --subsequent to this--

**SCALISI:** Uh huh.

**AGENT:** --with the Treasury designation of--

**SCALISI:** Yeah.

**AGENT:** --Chucho Perez . . . Are you familiar with any of--

**SCALISI:** No.

**AGENT:** -the payment arrangements--

**SCALISI:** Not-not at all.

**AGENT:** --and how that went down?

**SCALISI:** Not at all. We weren't even part of that.  An-and collected on that or--

**AGENT:** Mhmm.

**SCALISI:** --had any accounting of that.

**AGENT:** Okay.

7

**SCALISI:** We were the ones who told him, 'We don't go do shows in Mexico.'

**III. ARGUMENT**

Statements 1 through 3 above are inculpatory statements admissible against both defendants Del Entertainment and Del Villar as co-conspirator statements.  All five statements are admissible against defendant Del Entertainment as the statements of its agent.  Additionally, because most of Statement 5 constitutes false statements by defendant Scalisi that are not offered for their truth but rather to establish his efforts to cover up the conspiracy, Statement 5 is nonhearsay admissible against all the defendants.

A.    **Defendant Scalisi's Statements Were Made in Furtherance of His Conspiracy with Defendants Del Entertainment and Del Villar**

Statements 1 through 3 are all statements made in furtherance of his conspiracy with defendants Del Entertainment and Del Villar and during the time period of the charged conspiracy.

"Once a conspiracy is shown, the government need present only slight evidence connecting a defendant to the conspiracy." United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir. 1988).  This burden is easily met: for example, the Ninth Circuit deemed adequate the fact that a defendant had met with another individual shortly before the latter sold drugs to an undercover agent.  See United States v. Paris, 812 F.2d 471, 476 (9th Cir. 1987).  Even before some separate evidence has proved the conspiracy's existence, co-conspirator statements themselves may be used to establish the existence of the conspiracy.  Bourjaily v. United States, 483 U.S. 171, 180 (1987).

8

The Ninth Circuit has held Rule 802(d)(2)(E)'s requirement that co-conspirator statements be made "in furtherance" of a conspiracy to be broadly inclusive. It encompasses, "[m]ost importantly, statements made to keep coconspirators abreast of an ongoing conspiracy's activities." United States v. Yarborough, 852 F.2d 1522, 1535 (9th Cir. 1988). That is precisely what Statements 1 through 3 are. In all three, defendant Scalisi updated the confidential informant, then a fellow employee, of the actions of defendants Del Entertainment and Del Villar with respect to Chucho Perez notwithstanding the latter's designation as a specially designated narcotics trafficker.

Additionally, all three include defendant Scalisi's desire to conceal defendant Del Entertainment's ongoing business dealings with Chucho Perez: "now we're gonna create a paper trail from him to Angel's entity in Mexico, while he's trying to get citizenship here in the US. I don't care how much money's owed, I'd rather he hid Chucho's company" (Statement 1); "not under Chucho's name . . . it's under the promoter's name" (Statement 2); "There's uh deposits here from, from the Mexico account which is Yazmin and Manny and [UI]. I should probably delete that." (Statement 3). In addition to statements intended to apprise a co-conspirator of the activities of other co-conspirators, these statements are made to "set in motion transactions that are an integral part of the conspiracy," "made to induce enlistment or further participation" in the gang's activities or "prompt further action." Yarborough, 852 F.2d at 1535.

**B.    Defendant Scalisi's Statements Are Admissible Against Defendant Del Entertainment as Agent Admissions**

Defendant Scalisi's statements are also admissible against codefendant Del Entertainment as party-opponent admissions "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).  An agent is one who "act[s] on the principal's behalf and subject to the principal's control."  United States v. Bonds, 608 F.3d 495, 506 (9th Cir. 2010) (internal quotation marks omitted).  "The essential ingredient of the agency test is the extent of control exercised by the 'employer'.  It rests primarily upon the amount of supervision that the putative employer has a right to exercise over the individual, particularly regarding the details of the work."  Sida of Hawaii, Inc. v. NLRB, 512 F.2d 354, 357 (9th Cir. 1975) (internal quotation marks omitted).

Courts have concluded an agency relationship between a declarant and defendant employer existed under diverse circumstances, including a declarant who reported to a defendant who owned the company, see United States v. Paxson, 861 F.2d 730, 734 (D.C. Cir. 1988); a declarant hired by the defendant and who worked on matters in which defendant was actively involved, see United States v. Draiman, 784 F.2d 248, 256-57 (7th Cir. 1986); and a defendant who "directed [the declarant's] work on a continuing basis," Boren v. Sable, 887 F.2d 1032, 1041 (10th Cir. 1989).  Whether the employer specifically authorized the agent's statements is of no moment; "the statements need only concern matters within the scope of the agency; they need not be made within the scope of that agency."  In re Sunset Bay Ass'n, 944 F.2d 1503, 1519 (9th Cir. 1991).

10

"The existence of an agency relationship is a question for the judge under Rule 104(a) and must be proved by substantial evidence but not by a preponderance of the evidence." Hilao v. Estate of Marcos, 103 F.3d 767, 775 (9th Cir. 1996).  That low standard is easily met here.  Defendant Scalisi was the CFO of Del Entertainment's parent company, listed as CFO of Del Entertainment, was the designated representative of the Mexico bank account that received payments for performances by Del Entertainment artists in Mexico, and exercised control over the corporate credit card that booked a charter flight sending Gerardo Ortiz to perform a concert promoted by Perez in Mexico following Perez's OFAC designation. Defendant Scalisi, during his May 22 interview described his role as an "outside consultant" for Del Records, with his roles including tax planning and operations, such as entering distribution deals.  He also discussed opening and serving as signatory on Santander bank accounts (which would include the Del Melodia account) in Mexico for Del Records.  These activities were done for the benefit of codefendant Del Villar and his companies and subject to his control. Indeed, defendant Scalisi specifically noted that he traveled to Mexico to open the accounts "because Angel doesn't fly" -- i.e., he acted on his principal's behalf.

### C.   Much of Statement 5 Is Nonhearsay

Most of Statement 5 -- particularly the portions most inculpatory to the defendants -- are not hearsay at all because they would not be offered for the truth of the matter asserted.  In particular, defendant Scalisi describes how Gerardo Ortiz was warned not to travel to Mexico to perform at a concert promoted by Chucho Perez and that he was unfamiliar with any payment arrangements

11

because Del Records did not do shows in Mexico.  In reality, as the evidence at trial will show, defendant Scalisi personally participated in securing Ortiz's travel to perform in Mexico shortly after the defendants learned of Chucho Perez's designation and, as his other recorded statements show, defendants Del Entertainment, Del Villar, and Scalisi participated in collecting payment from Chucho Perez for some time thereafter.  These statements are therefore exempt from the rule against hearsay and admissible as to all the defendants as revealing consciousness of guilt and efforts to conceal their operations from law enforcement.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court rule that the statements of defendant Scalisi are admissible as to codefendants Del Entertainment and Del Villar.