Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
Hilary Potashner (SBN 167060)
hpotashner@larsonllp.com
Daniel R. Lahana (SBN 305664)
dlahana@larsonllp.com
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant JOSE ANGEL DEL VILLAR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DEL ENTERTAINMENT, INC.<br>[2] JOSE ANGEL DEL VILLAR,<br><br>    Defendant. | Case No. 2:22-cr-00267-MEMF<br><br>**RESPONSE TO THE GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT JOSE ANGEL DEL VILLAR [DKT NO. 584]**<br><br>Date:  08/15/2025<br>Time:  10:00 a.m.<br>Crtrm.: 8B<br><br>Hon. Maame Ewusi-Mensah Frimpong |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................... 1

II. ARGUMENT ...................................................................................................... 2

    A. The Probation Office and Every Party to this Case Agrees that the Most Analogous Guideline Provision is U.S.S.G. § 2S1.3; Moreover, Comparative Cases Support a Lower Sentence than the Government is Seeking. ................................................................... 2

    B. Co-Defendant Plea Agreements Cannot be Credited Over Ortiz's Sworn Trial Testimony. ............................................................................ 7

    C. The Two-Level Increase Under § 2S1.3(b)(1)(A) is Based Solely on Conduct that is Already Accounted for in the Guidelines Because it is an Essential Element of the Offense. ................................. 8

    D. The Safe Harbor Provision Applies. ..................................................... 10

    E. The Conspiracy Was Not "Otherwise Extensive" As Required To Impose The Four-Level Leader/Organizer Enhancement. ................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Coro*
   2022 WL 1565698 (2d Cir. 2022) ................................................................. 2, 3

*United States v. Ghacham, Inc., et al.*,
   2:22-cr-00424-MEMF (C.D. Cal. July 28, 2023) ........................................... 5, 7

*United States v. Hanna*,
   49 F.3d 572 (9th Cir. 1995) .............................................................................. 7

*United States v. McGowan*,
   668 F.3d 601 (9th Cir. 2012) ............................................................................ 7

*United States v. Oseguera Gonzalez*,
   507 F.Supp.3d 137 (D.D.C. 2020) .................................................................. 4, 5

*United States v. Zevallos-Gonzales, et al.*,
   No. 1:07-CR-20587 (S.D. Fla. 2007) ............................................................... 6, 7

**Federal Statutes**

18 U.S.C.
   § 3553(a) ........................................................................................................... 1

U.S.S.G.
   § 2S1.3 ..................................................................................................... *passim*

Kingpin Act .............................................................................................. *passim*

Defendant Jose Angel Del Villar, by and through his counsel of record, respectfully submits the following Response to the Government's Sentencing Position [Dkt. No. 584].

**I.      INTRODUCTION**

Though the sentencing guidelines already deprive Mr. Del Villar of a three-level reduction because he exercised his constitutional right to a jury trial, the government seeks to single out Mr. Del Villar for extra punishment due to his choice to go to trial, arguing for several sentencing enhancements that the government did not incorporate or affirmatively disavowed in the plea agreements it crafted for the co-defendants who pleaded guilty. And because of the relatively few Kingpin Act prosecutions, the government invites the Court to impose a sentence that will make an example out of Mr. Del Villar under the guise of promoting general deterrence.

However, neither Mr. Del Villar's exercise of his right to hold the government to its burden, nor the absence of a high volume of Kingpin Act prosecutions, justify imposing inapplicable sentencing guidelines enhancements. Moreover, they do not justify abandoning the statutory mandate that a court conduct an individualized inquiry and impose a sentence that is sufficient but no greater than necessary.

Through this response brief, Mr. Del Villar intends only to respond directly to the core sentencing guideline arguments set forth in the government's August 1, 2025 sentencing position.  Mr. Del Villar's objections to the Presentence Report and his discussion of the sentencing factors under 18 U.S.C. § 3553(a) have been previously submitted to the Court and therefore are not repeated herein.

//
//
//
//

## II. ARGUMENT

### A. The Probation Office and Every Party to this Case Agrees that the Most Analogous Guideline Provision is U.S.S.G. § 2S1.3; Moreover, Comparative Cases Support a Lower Sentence than the Government is Seeking.

The probation office, the government, and every defendant in this case agrees that the most analogous and therefore correct guideline provision to apply in this case is U.S.S.G. § 2S1.3. Despite expressly saying so – as it bound itself to do in the plea agreements signed with other defendants in this case – the government in the same breath suggests to this Court that § 2M5.1, which has a higher base offense level, could also be proper. The Court should disregard the government's attempt to backdoor a higher offense level through § 2M5.1 for several reasons, the least of which is § 2M5.1's clear inapplicability.

First, § 2M5.1 is completely divorced from the monetary amounts involved in Kingpin Act cases, and if applied in such cases, would set the same base offense level regardless of whether the case involves wildly different monetary amounts. For example, a defendant who transacts in $5 with an OFAC designated person would have the same offense level as a defendant who transacts in $50 million, thereby generating absurd sentencing disparities in what is essentially a financial crime. For this reason, § 2M5.1 cannot be more analogous than § 2S1.3, which expressly provides for an increased offense level based on the monetary amount involved in the case.

Second, the cases the government cites for applying § 2M5.1 are inapposite. In *Mones Coro*, which the government describes as "probably the most analogous" (Gov't Sent'g Position, Dkt. No. 584 at 17:9-11), the defendant provided "extremely valuable illicit flight services" to two prominent members of Venezuelan President Nicolas Maduro's inner circle who occupied positions in the illegitimate government. One of those officials was also an "infamous narcotics trafficker who,

while a Venezuelan official, facilitated, coordinated, and protected other narcotics traffickers operating in Venezuela." Brief for the United States, *United States v. Coro*, 2021 WL 6061993 at *4 (2d. Cir. Dec. 17, 2021). He also supported the terrorist organization Hizballah. *Id*. In return for his services, the defendant *received* "millions of dollars in payment." *United States v. Coro*, 2022 WL 1565698 at *2 (2d Cir. 2022).

Under these facts, the government and the probation office in *Mones Coro* asserted that § 2M5.1 was the most analogous guideline and the defendant did not object. The Court concluded, without defense objection, that the offense involved an attempt to avoid national security controls, applied § 2M5.1, applied a four-level leader/organizer enhancement, and ultimately sentenced the defendant to 55 months' imprisonment, which was a variance below the calculated guidelines range.[1] *Mones Coro* is significantly more aggravated and not analogous to this case at all. Mr. Del Villar did not *receive* millions of dollars in connection with the Ortiz concerts; the company received $140,000 in total. Mr. Del Villar did not fly members of an illegitimate government who facilitated narcotics trafficking and supported terrorism to places of strategic importance around the world; according to the government's evidence, he paid for a chartered flight to take a non-designated musician to perform at a music venue. Despite these significant differences, the government here justifies its request for a sentence *above* Mones Coro's simply because Mr. Del Villar exercised his constitutional right to a jury trial. Gov't Sent'g Position, Dkt. 584 at 18:12-15 ("[U]nlike Mones Caro [sic]. . . defendant here put the government

---

[1] The government states that the defendant signed a plea agreement (Gov't Sent'g Position, Dkt. No. 584 at 17:14), but he pleaded guilty without an agreement. Brief for the United States of America, *United States v. Victor Mones Coro*, 2021 WL 6061993, at *8. He did not object to application of § 2M5.1 or its base offense level of 26, presumably because the millions of dollars at issue in that case could have generated an even higher offense level under § 2S1.3.

to its burden at trial.").

The government also relies on a District of Columbia case, *United States v. Oseguera Gonzalez*, 507 F.Supp.3d 137 (D.D.C. 2020), which is similarly more aggravated and distinguishable. The defendant, daughter of the head of an international drug cartel, had her own businesses designated by OFAC for their connection to the cartel. The OFAC designations were served on her, her relatives, made the front page of the newspaper in Mexico where she lived, and caused her web hosting platforms to disable the business's services. Sentencing Memorandum by USA as to Jessica Johanna Osegura Gonzalez, *USA v. Osegura Gonzalez*, No. 1:20-CR-040 (D.D.C June 3, 2021), Dkt. No. 224 at 11-12. Despite this, she continued to transact through her sanctioned businesses, and even changed their names to avoid detection. *Osegura Gonzalez*, Dkt. No. 224 at 19. While the amount of funds involved are not listed in the plea agreement, the offense involved five separate businesses the defendant owned, including an advertising business, a tequila business, a sushi restaurant, a vacation cabin rental business, and an agricultural company. *Osegura Gonzalez*, Dkt. No. 224 at 11. The defendant stipulated in her plea agreement to the applicability of § 2M5.1, and she was sentenced to 30 months' imprisonment, a variance below the calculated guideline range. *USA v. Osegura Gonzalez*, No. 1:20-CR-040 (D.D.C Mar. 12, 2021), Dkt. No. 213 at 2; *Osegura Gonzalez*, Dkt. 231 at 77.) Despite the fact that the defendant herself was the owner and operator of the five businesses that received OFAC designations for their connection to the cartel, the government contends that Mr. Del Villar's sentence must be higher than 30 months because of the disputed role enhancement and because Mr. Del Villar exercised his constitutional right to a jury trial. The government does not articulate, let alone address the aggravating factors in *Oseguera-Gonzalez*—the direct connection the defendant had to the cartel, the fact that her own businesses were OFAC designated because of that connection, or that it was five separate businesses that were so designated. Nor does the

government address the possibility that without knowing the total monetary amount involved, defendant's stipulation to § 2M5.1 could have generated a lower offense level than would have otherwise applied under § 2S1.3. Accordingly, there is little information to evaluate the parties' stipulation to § 2M5.1 in *Oseguera Gonzalez*, and the defendant may have made a strategic choice to stipulate to it based on the monetary figures at issue in her case.

A third case, though referenced only in a footnote, is *United States v. Ghacham*, a Kingpin Act case recently adjudicated by this Court. The *Ghacham* case involved two separate schemes: illegally transacting in business with an OFAC designated person with connections to the Sinaloa Cartel and perpetrating a years-long scheme defrauding the government out of nearly $6.4 million. Government's Sentencing Position Regarding Defendant Ghacham, Inc., *United States v. Ghacham, Inc., et al.*, 2:22-cr-00424-MEMF (C.D. Cal. July 28, 2023), Dkt. 49 at 3:4-10. Though the government here correctly points out that the plea agreement in *Ghacham* referenced § 2M5.1 with respect to the Kingpin Act offense, it omits that the *Ghacham* plea agreement left open whether the base offense level was 14 or 26. *Ghacham*, Dkt. No. 8 at 18. While the government summarizes the outcome in *Ghacham* as "the Court did not ultimately need to make the determination [] whether the elevated base offense level applied" (Gov't Sent'g Position, Dkt. No. 584 at 7, fn. 1), it fails to point out that the government itself did not seek the elevated offense level of 26 under § 2M5.1. *Ghacham*, Dkt. No. 49 at 6:6-7. The government argued for a total offense level of 23, which was based solely on the customs fraud guideline, and it agreed to an offense level of just 14 for the Kingpin Act violation.[2] *Ghacham*, Dkt. No. 49 at 5:10-17.

---

[2] This Court sentenced the corporate defendant to probation and a $4 million (*Ghacham*, Dkt. No. 104), while sentencing the individual corporate officer to 48 months' imprisonment and waiving all fines (*Ghacham*, Dkt. No. 107).

|    |    |
|---|---|
| 1  | Though the government's sentencing position obliquely references a Kingpin |
| 2  | Act case that applied § 2S1.1 (Gov't Sent'g Position, Dkt. No. 584 at 6:12-14), |
| 3  | which is in the same subpart of the guidelines as § 2S1.3 (Chapter 2, Part S – Money |
| 4  | Laundering and Monetary Transaction Reporting), the government does not |
| 5  | otherwise address or even identify it.  We have identified that case, and it bears |
| 6  | further analysis.  In *United States v. Zevallos-Gonzales*, defendants, a husband and |
| 7  | wife, were charged in a sixteen count indictment with violations of the Kingpin Act, |
| 8  | conspiracy to violate the Kingpin Act, and money laundering.  Indictment, *United* |
| 9  | *States v. Zevallos-Gonzales, et al.*, No. 1:07-CR-20587 (S.D. Fla. 2007 July 27, |
| 10 | 2007), Dkt. No. 1.  According to the indictment, after defendant Sanchez's husband, |
| 11 | a convicted narcotics trafficker, received an OFAC designation, Sanchez, through |
| 12 | shell companies held and controlled by her and her husband, sold one home for |
| 13 | $731,500, sold a second home for $850,000, wire transferred the proceeds of those |
| 14 | illegal real estate transactions, totaling over $1.4 million to Peruvian bank accounts |
| 15 | of the two shell corporations, and deposited two checks totaling $100,000 from her |
| 16 | husband.  *Zevallos-Gonzales*, Dkt. No. 1 at 6-7.  The indictment further alleged that |
| 17 | the defendants were officers and agents of the shell corporations who knowingly |
| 18 | violated the Kingpin Act.  *Zevallos-Gonzales*, Dkt. No. 1 at 7. |
| 19 | In exchange for Sanchez pleading guilty to a single Kingpin Act count, the |
| 20 | government stipulated to applying guideline § 2S1.1, to limiting the § 2B1.1 table to |
| 21 | the $100,000 Sanchez personally gained from depositing the two checks in her bank |
| 22 | account, and to dismissing the remaining counts of the indictment. Plea agreement, |
| 23 | *Zevallos-Gonzales*, Dkt. No. 62.  Though the PSR calculated a higher guideline |
| 24 | based on the total value of the funds involved—$1.6 million (*see* Objection to Pre- |
| 25 | Sentencing Report, *Zevallos-Gonzales*, Dkt. No. 73 at 3; Govt's Omnibus Response |
| 26 | to Defendant's Objections to the Presentence investigation report and Motion for a |
| 27 | variance, *Zevallos-Gonzales*, Dkt. 77 at 1)—the government stood by the plea |
| 28 | agreement and the Court sentenced Sanchez to three years of probation.  Amended |

Judgment in a Criminal Case, *Zevallos-Gonzales*, Dkt. No. 93 at 2.

In short, the Court should reject the government's insinuation that an offense level of 26 under § 2M5.1 should be informally factored into Mr. Del Villar's sentencing, particularly when it sought an offense level of 14 in the *Ghacham* case adjudicated by this Court and in this case has agreed to apply § 2S1.3 to the co-defendants through their plea agreements. Moreover, the government's claims regarding the need for general deterrence in Kingpin Act cases ring hollow given the significantly aggravated nature of the government's comparator cases, which all resulted in sentences well below what the government seeks against Mr. Del Villar. The Court should roundly reject the government's suggested 78-month sentence.

### B. Co-Defendant Plea Agreements Cannot be Credited Over Ortiz's Sworn Trial Testimony.

Rather than credit Ortiz's sworn trial testimony that the total funds involved were "more or less" than $1.5 million, the government argues that it is enough that two co-defendants stipulated to the total funds being more than $1.5 million in written plea agreements authored by the government. Crediting the written plea agreements over the sworn trial testimony of Ortiz does not comport with due process nor rise to the level of proving the value of the funds by a preponderance of the evidence.

The constitutional guarantee of due process is fully applicable at sentencing. *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995). It is a violation of due process to rely on false or unreliable information at sentencing. *Id*. A statement of co-conspirator, even when made under oath, "does not in and of itself justify a finding of reliability." *United States v. McGowan*, 668 F.3d 601, 607, 607-608 (9th Cir. 2012) (due process violated where court relied on prisoner's unsubstantiated allegation that defendant sold narcotics in prison).

The plea agreements are not only unsubstantiated, they are contradicted by Ortiz's sworn testimony at trial. Trial testimony has more hallmarks of due process

than a written plea agreement authored by the government. The witness's testimony is under oath, in front of a jury, and the witness knows he will be subject to cross-examination. While the co-defendants pleaded guilty under oath before the Court, the Court likely did not ask them to affirm the veracity of the specific factual statement that the total funds involved exceeded $1.5 million. The only instance in which someone was asked a specific question about the total funds involved was at trial in a leading question by the government: "And was the total amount paid for these concerts at least $1.5 million dollars?" Trial Tr. 38:18-20, Mar. 20, 2025. Ortiz testified, "Yes, more or less." Trial Tr. 38:21-25, Mar. 20, 2025. Given this testimony, it would be erroneous to rely on the unsubstantiated statements in the plea agreements to impose the sixteen-level increase based on a factual finding that the value of the funds exceeded $1.5 million.

### C. The Two-Level Increase Under § 2S1.3(b)(1)(A) is Based Solely on Conduct that is Already Accounted for in the Guidelines Because it is an Essential Element of the Offense.

The government does not dispute that the two-level increase it seeks under § 2S1.3(b)(1)(A) is based solely on the conduct that makes up the essential elements of a Kingpin Act violation. *See generally* Gov't Sent'g Position, Dkt. No. 584 at 10:17-23. According to the government, because business dealings and other transactions with designated persons are prohibited, any funds resulting from those transactions are necessarily the proceeds of an unlawful activity, thereby triggering the two-level increase. *Id*. This argument is based on circular reasoning that falls apart upon closer analysis of § 2S3.1 and the government's treatment of the co-defendants in this case.

First, a violation of the Kingpin Act can involve transactions in which the proceeds are or are not the result of a separate illegal activity. Here, the funds are the proceeds of concerts, not separate illegal activity. Under the government's theory, defendants who know that funds received from dealings with prohibited

persons are the result of separate illegal activity should receive the same guidelines treatment as those who do not. The guidelines clearly do not intend for that outcome.

Looking at the enhancement in the context of the offenses to which it expressly applies demonstrates that it is not intended to apply to every individual who is convicted under the Kingpin Act, which is what the government advocates. § 2S1.3 applies to defendants who structure financial transactions to evade reporting and commit other failures to report financial information. In this context it becomes apparent that the two-level increase under § 2S1.3 is designed to enhance the sentences of individuals who not only commit the charged regulatory crime, but do so knowing or believing that the underlying funds at issue were themselves "proceeds of unlawful activity, or were intended to promote unlawful activity." In other words, the enhancement applies only to those to defendants who engage in an additional layer of wrongdoing separate and in addition to the offense conduct itself. Given the undisputed fact that the funds involved here are what individuals paid for concerts, it is clear that this enhancement does not apply.

Second, enhancing the sentence of every individual convicted of a Kingpin Act offense would constitute double-counting. The government argues against this by pointing out that defendants can "fall within § 2S1.3 without violating the Kingpin Act." Gov't Sent'g Position, Dkt. No. 584 at 11:11-12. But the government fails to acknowledge that there is no guideline for violations of the Kingpin Act, so an analogous guideline must be used, which by definition means that the guideline typically applies to defendants who have not violated the Kingpin Act. The government's argument is illogical in this specific context where the offense has no guideline provision and an analogous guideline must be used.

Finally, as Mr. Del Villar pointed out, if every defendant convicted of a Kingpin Act violation should receive the enhancement, then the government should have sought it from the other co-defendants. In response, the government

mischaracterizes Mr. Del Villar's argument as an estoppel argument because, in the government's words, "other plea agreements in this case did not require the defendants to stipulate to" the two-level enhancement. Gov't Sent'g Position, Dkt. No. 584 at 11:14-15.  More than just not requiring any defendant to agree to this enhancement, the government affirmatively agreed <u>not</u> to seek it or any other enhancements in a  plea agreement with one of the co-defendants.  Such agreements are exceedingly difficult to extract from the government in plea negotiations, and Mr. Del Villar offered it as evidence that the government did not believe that this enhancement applied to this case.  Moreover, seeking this enhancement only as to Mr. Del Villar and no other defendants smacks of yet another attempt by the government to impose improper punishment for exercising his constitutional right to a jury trial, even though the guidelines already deny all defendants who go to trial the three-level reduction for acceptance of responsibility.  The Court should reject the government's attempts to seek additional enhancements not sought against defendants who pleaded guilty.

### D. <u>The Safe Harbor Provision Applies.</u>

Because it is undisputed that the proceeds were from concerts, not separate criminal activity, the safe harbor provision applies.  Applying the safe harbor provision does not "defeat[] the very purpose of the sanctions regime," as individuals falling under the safe harbor guideline provision are still convicted of a federal felony offense.  Rather, this provision is intended to differentiate between individuals who commit unlawful financial offenses and those who do so with the added knowledge that the funds themselves are involved in illegal activity.  This offense involves proceeds from concert ticket sales, not illegal activity.  While this fact does not provide a complete defense, as the Court has already concluded, it does trigger the safe harbor provision under § 2S1.3.

//
//

### E. The Conspiracy Was Not "Otherwise Extensive" As Required To Impose The Four-Level Leader/Organizer Enhancement.

To apply the four-level leader/organizer enhancement, the offense must involve five or more participants or be otherwise extensive. While Mr. Del Villar disputes the government's assertion that Mr. Del Villar directed Ortiz, Scalisi, and Perez, they do not amount to five or more participants. Moreover, the government has agreed that Ortiz and Scalisi qualify for minor role, thereby creating a scenario in which every participant is facing either an aggravating or minor role reduction and there is no "average participant" under the guidelines.

Because there are not enough qualifying participants, the government contends that the offense was "otherwise extensive" because "Ortiz's participation in various concerts involved the entire Del Entertainment apparatus, including various employees who were unaware of defendant's sanctions evasion." The government conflates the nature of Del Entertainment's legitimate business, which involves concert performances that employees work on. In determining the extensiveness of the offense, the Court should look beyond the nature of Del Entertainment's business's day-to-day operations. Otherwise, every large company that is convicted of a crime, even if the offense conduct represents a relatively small slice of the company's overall operations, would meet the definition of "otherwise extensive."

Finally, one of the factors the Court is to consider is Mr. Del Villar's overall share of the proceeds. As Mr. Del Villar pointed out, his share was small.[3] The vast

---

[3] The government misconstrues and reformulates Mr. Del Villar's argument as saying instead that the funds were small relatively to his wealth and uses its reformulation to make a dig at Mr. Del Villar's professional success. Gov't Sent'g Position, Dkt. No. 584 at 16:13-14. The guidelines' commentary clearly states that an individual's relative share of the proceeds of an offense is an important factor to consider in analyzing the applicability of the leader/organizer enhancement.

majority of the funds went to Ortiz, who was Del Entertainment's client. Despite this, the government has affirmatively agreed to seek a minor role reduction for Ortiz. Moreover, Mr. Del Villar did not distribute or control the funds, which is further indication that he should not receive a leader/organizer enhancement.

Dated: August 8, 2025  LARSON LLP

By: /s/ *Stephen G. Larson*
Stephen G. Larson
Hilary Potashner
Daniel R. Lahana
Attorneys for Defendant JOSE ANGEL DEL VILLAR